## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        *Plaintiff,*<br><br>        v.<br><br>AMY SARCIA, et al.<br>        *Defendant.* | No. 3:19-cr-00064 (VAB) |

### RULING AND ORDER ON MOTION FOR RECONSIDERATION

After an eleven-day trial, a jury found Amy Sarcia ("Ms. Sarcia") guilty of conspiracy to possess with intent to distribute and to distribute cocaine and/or heroin, more specifically 500 or more grams of cocaine and 100 grams or more of heroin under 21 U.S.C. § 841(a)(1) (Count One) and conspiracy to launder monetary instruments under 18 U.S.C. § 1956(a)(1)(A)(i) (Count Thirteen). *See* Jury Verdict, ECF No. 1790 (Sept. 28, 2021) ("Jury Verdict"); Second Superseding Indictment, ECF No. 704 (Oct. 23, 2019) ("Second Superseding Indictment").

Before the jury issued its verdict, Ms. Sarcia moved for acquittal, and then renewed the motion after the jury issued its verdict, requesting acquittal of Counts One and Thirteen. *See* Oral Mot. for J. of Acquittal by Amy Sarcia, ECF No. 1771 (Sept. 23, 2021); Renewed Oral Mot. for Acquittal by Amy Sarcia, ECF No. 1786 (Sept. 28, 2021); Mem. of Law in Supp. of Def. Amy Sarcia's Rule 29 Mot. for J. of Acquittal, ECF No. 1799 (Oct. 8, 2021).

On September 9, 2022, the Court granted in part and denied in part Ms. Sarcia's motions for acquittal and judgment of acquittal. *See* Order, ECF No. 1977.

On October 14, 2022, the Government moved for reconsideration of that order. *See* Mot. for Reconsideration, ECF No. 1982 ("Mot.").

For the following reasons, the Court **DENIES** the Government's motion for reconsideration.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

In light of the Court's prior written orders in this case, the Court assumes the parties' familiarity with the factual and procedural background. *See, e.g.*, Order at 3–10, ECF No. 1977 (Sept. 9, 2022).

## II.     STANDARD OF REVIEW

Although the Federal Rules of Criminal Procedure do not explicitly provide for motions for reconsideration, such motions may be filed in a criminal case. *See United States v. Clark*, 984 F.2d 31, 33–34 (2d Cir. 1993) (recognizing that a post-judgment motion for reconsideration can be filed in a criminal case so long as it is timely filed); D. Conn. L. Cr. R. 1(c) (explaining that D. Conn. L. Civ. R. 7(c) shall apply in criminal proceedings); *United States v. Reyes*, No. 3:11-cr-1 (JBA), 2013 WL 789735, at *1 (D. Conn. Mar. 4, 2013). In such cases, motions for reconsideration are assessed under the civil reconsideration standard. *See United States v. Smith*, 105 F. Supp. 3d 255, 258 (W.D.N.Y. 2015) (internal citation and quotation marks omitted).

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (cleaned up). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (cleaned up). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a

2

second bite at the apple." *Id.* at 52 (cleaned up) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

## III.   DISCUSSION

 The Government makes four arguments in its motion for reconsideration.

First, the Government argues that the Court relied on the incorrect legal standard for a Rule 29 challenge to the sufficiency of the evidence. Mot. at 8.

Second, the Government argues that the Court improperly relied on the Government's decision to charge Ms. Sarcia with a lower quantity of heroin and cocaine than her co-defendants. *Id.* at 10.

Third, the Government argues that the Court "improperly focused on whether 500 grams of cocaine and/or 100 grams of heroin is attributable to [Ms.] Sarcia through her own distribution or possession" and did not adequately consider "whether the quantity was reasonably foreseeable to her as a result of her participation in the conspiracy or knowledge of other transactions." *Id.* at 11.

Finally, the Government argues that the Court overlooked evidence sufficient for the jury to reasonably find the threshold quantities attributable to Ms. Sarcia through her constructive possession of the narcotics in the safe. *Id.* at 15.

### A.  The Rule 29 Standard

When considering a motion for acquittal, courts "defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence," *United States v. Reifler*, 446 F.3d 65, 94 (2d Cir. 2006) (internal citation and quotation marks omitted). "Not only must the evidence be viewed in the light most favorable to the government and all permissible inferences

drawn in its favor . . . but if the evidence, thus construed, suffices to convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt," the conviction must stand. *United States v. Martinez*, 54 F.3d 1040, 1042 (2d Cir. 1995) (internal citations omitted). In a close case, where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000) (alterations omitted) (quoting *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999)).

The Government argues that the Court improperly relied on the "equipoise rule" from *United States v. Coplan*, 703 F.3d 46 (2d Cir. 2012). Mot. at 8. In the Government's view, the Second Circuit rejected the "equipoise rule" in *United States v. Aquart* when the court stated that this rule "is of no matter to sufficiency analysis because it is the task of the jury, not the court, to choose among competing inferences." 912 F.3d 1, 44–45 (2d Cir. 2018). The Government argues that where the jury could draw two different inferences from the evidence, then "the jury's choice must be respected." Mot. at 9.  The Government further emphasizes that under Rule 29, the Court must view the evidence in the light most favorable to the government, crediting every inference that could be drawn in the Government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *Id.* (quoting *United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021)).

Ms. Sarcia responds that the Court properly relied on the "equipoise rule" because it found that the evidence presented to the jury was "so meager as to preclude the inference necessary to a finding favorable to the government." Def. Sarcia's Resp. to Gov't Mot. for Reconsideration at 2–3, ECF No. 1984 ("Opp'n"). Ms. Sarcia argues that the Government

assumes the Court "viewed the evidence as being fairly equal in terms of guilt or innocence as it related to the quantity of drug" when that was not the basis of the Court's decision. *Id.*

The Court agrees.

As the Government correctly states, the Second Circuit in *Aquart* found that the "equipoise rule" is irrelevant where there are competing inferences. 912 F.3d at 44–45. The court, however, went on to state that the "equipoise rule" does apply "where evidence is nonexistent or so meager as to preclude the inferences necessary to a finding favorable to the government." *Id.* at 45.

Here, the Court relied on the "equipoise rule" only after finding the evidence was insufficient to "preclude the inferences necessary." *See* Order at 43–52, ECF No. 1977. More specifically, the Court found that there was no evidence of drug quantity "through any undercover efforts, including conversations captured on wiretaps," in Ms. Sarcia's home, or in Ms. Sarcia's office at the Two Wives Restaurant. *See id.* at 44–45. The Court further found there was no evidence to suggest that Ms. Sarcia "touched, much less possessed or distributed, any of" the drugs seized by the Government. *Id.* at 45–46. The Court noted that Stephanie Johnson testified that Ms. Sarcia "use[d] and distribut[ed] . . . cocaine" in very small quantities that were inadequate to connect Ms. Sarcia to the 500 grams of cocaine alleged. *Id.* at 46. The Court also discussed the lack of evidence connecting Ms. Sarcia to the quantities of drugs obtained during her co-Defendants' "trips to New York" or showing that Ms. Sarcia had knowledge of or access to the safe in the Unit 10 apartment. *Id.* at 47.

Therefore, this is not a case where the evidence could lead to "either of . . . two results, reasonable doubt or no reasonable doubt" such that the "court must let the jury decide the matter." *Autuori*, 212 F.3d at 114. Instead, the Court reviewed the evidence and found that the

"evidence [was] nonexistent or so meager as to preclude the inferences necessary to a finding favorable to the government" and appropriately applied the "equipoise rule." *Aquart*, 912 F.3d at 45. Thus, the Government has not "point[ed] to controlling decisions . . . that the court overlooked," *Analytical Surveys, Inc.*, 684 F.3d at 52 (cleaned up), but instead pointed to controlling decisions that the Court properly cited and relied upon in its analysis.

Accordingly, the motion for reconsideration will be denied on these grounds.

### B. The Charging Decision

The Court, in a single sentence in its 55-page order, briefly discussed the Government's decision to charge Ms. Sarcia with a lesser quantity than Mr. Whyte. *See* Order at 48, ECF No. 1977 ("Indeed, by indicting and therefore considering Mr. Whyte and Ms. Sarcia responsible for far different quantities . . . the Government effectively concedes that the quantity of cocaine in the safe in Unit 10 could not plausibly be attributed to her, even under the lesser probable cause standard." (citations omitted)).

The Government argues that the Court "improperly relied on a discretionary [charging] decision made by the Government." Mot. at 10. The Government emphasizes that charging decisions are based on a variety of considerations and therefore, are not properly considered evidence. Mot. at 10–11.

The Court agrees in part and disagrees in part.

Although charging decisions are not evidence, *see* MODERN FED. JURY INSTRUCTIONS— CRIM. Ch. 3.01, Instruction 3-1 ("[A]n Indictment is merely a statement of charges and not itself evidence"); MODERN FED. JURY INSTRUCTIONS—CRIM. Ch. 3.01, Instruction 3-4 ("Whether a person should be named as a co-conspirator or indicted as a defendant is a matter withing the sole discretion of the [Government]. Therefore, [the jury] may not consider it in any way in

reaching [a] verdict."), the Court did not base its analysis on the charging decision. *See* Order at 47–48, ECF No. 1977. Instead, the Court found that it could not "adopt the notion that Ms. Sarcia constructively possessed the quantities of cocaine and heroin contain in the safe" based on existing case law. *Id.* at 47 (first citing *United States v. Martinez*, 133 F. App'x 762, 764–66 (2d Cir. 2005); and then citing *United States v. Soto*, 716 F.2d 989, 991–92 (2d Cir. 1983)). Additionally, as discussed above and below, the Court relied on the lack of evidence that Ms. Sarcia could be held responsible for the charged drug quantities. *See* Order at 47–48, ECF No. 1977. The Government does not provide any reason the Court would have come to a different conclusion if it had not briefly discussed the charging decision. Therefore, even though the Government has identified what could be an error, to the extent that it is an error, that error would not "reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.

Accordingly, the motion for reconsideration will be denied on these grounds.

### C.  The Quantity Reasonably Foreseeable to Ms. Sarcia

"[D]rug quantity is an element that must always be pleaded and proved to a jury or admitted by a defendant to support conviction or sentence on an aggravated offense under Section 841(b)(1)(A) or (b)(1)(B)." *United States v. Gonzalez*, 420 F.3d 111, 131 (2d Cir. 2005). "The drug quantity attributable to a defendant knowingly participating in a drug distribution conspiracy includes (1) transactions in which he participated directly; (2) transactions in which he did not personally participate, but where he knew of the transactions or they were reasonably foreseeable to him; and (3) quantities he agreed to distribute or possess with intent to distribute regardless of whether he ultimately committed the substantive act." *United States v. Pauling*, 924 F.3d 649, 657 (2d Cir. 2019) (internal quotations and citation omitted).

The Government argues the Court "improperly focused on whether 500 grams of cocaine and/or 100 grams of heroin is attributable to [Ms.] Sarcia through her own distribution or possession while failing to consider also whether the quantity was reasonably foreseeable to her as a result of her participation in the conspiracy or knowledge of other transactions." Mot. at 11. In the Government's view, "connecting [Ms.] Sarcia to threshold quantities through undercover activities, car stops, searches of her office or residence, or intercepted communications was not required." *Id.* The Government argues that the Court "ignored [Ms. Sarcia's] role in the conspiracy that made the absence of . . . direct possession evidence logical and failed to consider reasonable foreseeability as a result of her participation in the conspiracy." *Id.* at 12.

The Government further argues that there was testimony from Ms. Johnson that Ms. Sarcia personally distributed "a few grams" and a jury could have concluded that Ms. Johnson's testimony to that effect was an underestimate because "[Ms. Johnson] had been very close with [Ms.] Sarcia" and because Ms. Sarcia had a "extensive" role in the conspiracy, close relationship with Mr. Whyte, and access to the stash apartment. *Id.* The Government also argues the jury could have concluded the relevant quantities based on "the amount of money [Ms.] Sarcia laundered for [Mr.] Whyte." *Id.* at 12–13. Finally, the Government argues that "a jury could reasonably determine that [Ms.] Sarcia knew that [Mr.] Whyte was storing narcotics in the stash apartment they shared and that such quantities, given his prolific distribution and need to launder proceeds, were 500 grams or more of cocaine and 100 grams or more of heroin." *Id.* at 14.

In response, Ms. Sarcia emphasizes the lack of evidence tying her to any controlled buys or to any quantity of drug above a few grams. *See* Opp'n at 3. Ms. Sarcia argues that it is inadequate for the Government to rely on Mr. Whyte and a drug purchase that occurred outside of the restaurant because, if Ms. Sarcia was aware of the transactions, there would be no reason

for Mr. Whyte to conduct sales outside where he was in public view. *See id.* Ms. Sarcia argues

that her relationship with Mr. Whyte is also an insufficient basis to connect her to the alleged

quantities because there is no evidence that she knew of the scope or quantities of drugs Mr.

Whyte was dealing. *See id.* at 4–5. Finally, Ms. Sarcia argues that the Government "ask[s] this

Court to speculate" that Ms. Johnson may have testified falsely under oath. *Id.* at 5. Even if this

were true, Ms. Sarcia argues that the "argument would suggest that Ms. Johnson's testimony . . .

should be disregarded." *Id.* Overall, Ms. Sarcia argues that much of the Government's motion

relies on speculative inferences that are insufficient to meet the burden of proof in a criminal

trial. *See id.* at 3–8.

      The Court agrees.

      The Government fails to properly address the Second Circuit's language in *Pauling* when

it argues that the Government is not required to produce evidence of a sufficient threshold of

known quantities that were tied to the defendant as a basis for any additional quantities that could

then potentially be reasonably foreseeable. Indeed, the ruling in *Pauling* states the opposite.

More specifically, "[t]o prove the quantity by one of [the three] means beyond a reasonable

doubt, the government must introduce specific evidence of drug quantities, or evidence from

which quantity can, through inference, be logically approximated or extrapolated." *Pauling*, 924

F.3d at 657. "Thus, while quantities of controlled substances in a drug distribution conspiracy

prosecution may be determined through extrapolation, approximation, or deduction, there

ordinarily must be evidence of known quantities, which are sufficiently representative of the

unknown quantities and from which an approximation of the unknown quantities can logically be

inferred." *Id.*

Notably, the Government does not cite to any case law that supports its argument that the jury could have properly inferred the alleged quantities of drugs based on Ms. Sarcia's "role" in the conspiracy and close relationship to Mr. Whyte, without first determining a threshold amount.

The Court, therefore, appropriately focused the quantity analysis on the specific quantities that could be connected to Ms. Sarcia. In doing so, the Court considered the following: undercover efforts, including wiretap conversations; the search of Ms. Sarcia's home; the search of Ms. Sarcia's office at the restaurant; the lack of evidence that could have tied Ms. Sarcia to the seized drugs; the lack of evidence that Ms. Sarcia made any sales of cocaine or heroin, including Ms. Johnson's testimony; the lack of evidence tying Ms. Sarcia to the "trips to New York"; and the lack of evidence that Ms. Sarcia had knowledge of or access to the safe in Unit 10. *See* Order at 44–47, ECF No. 1977. After finding insufficient evidence linking Ms. Sarcia to a threshold quantity of cocaine and heroin, the Court could not then extrapolate or approximate the unknown quantities that may have been reasonably foreseeable to her. *See Pauling*, 924 F.3d at 657.

Thus, the Government has not "point[ed] to controlling decisions or data that the court overlooked," *Analytical Surveys, Inc.*, 684 F.3d at 52 (cleaned up), but instead pointed to controlling decisions that the Court properly cited and relied upon in its analysis.

Moreover, the Government relies solely on exhibits cited to in its opposition to Ms. Sarcia's motion for acquittal and considered in the Court's prior order. *See* Omnibus Opp'n to Mot. for Acquittal at 3–9, ECF No. 1814; Order at 44–52, ECF No. 1977. A motion for reconsideration "is not a vehicle for relitigating old issues . . . or otherwise taking a second bite at the apple," *Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255 (cleaned up). Even this evidence, however, does not provide a basis for determining a specific quantity because the quantities are

not specified and often the drug type is not specified. *See* Mot. at 12 (citing several Government exhibits that refer to "unspecified quantities" of "drugs"); *see also* Order at 44–52, ECF No. 1977 (describing the various other reasons the evidence was insufficient to connect Ms. Sarcia to the alleged drug quantities).

Finally, even if, as the Government argues, the jury could have determined Ms. Johnson was not being truthful, this does not provide a basis for finding the threshold drug quantity required by *Pauling* because Ms. Johnson's purportedly false testimony does not lead to an inference of any particular quantity that could instead be attributed to Ms. Sarcia. *See Pauling*, 924 F.3d at 657 ("[T]here ordinarily must be evidence of known quantities, which are sufficiently representative of the unknown quantities and from which an approximation of the unknown quantities can logically be inferred."); *see also United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015) ("[S]pecious inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is *probably* guilty."). Therefore, the Government has not met the strict burden required for reconsideration.

Accordingly, the Court will deny the motion on these grounds.

### D.  Ms. Sarcia's Constructive Possession of the Safe

As already noted, "drug quantity is an element that must always be pleaded and proved to a jury or admitted by a defendant to support conviction." *Gonzalez*, 420 F.3d at 131. "The drug quantity attributable to a defendant knowingly participating in a drug distribution conspiracy includes . . . quantities he agreed to distribute or possess with intent to distribute 'regardless of whether he ultimately committed the substantive act.'" *Pauling*, 924 F.3d at 657 (internal quotations and citation omitted).

11

The Government argues that "the Court overlooked evidence that was sufficient for the jury to reasonably find the threshold quantities attributable to [Ms.] Sarcia—constructive possession of the narcotics in the safe inside the . . . apartment." Mot. at 15. The Government also argues that two of the cases cited in the Court's prior order are distinguishable—*United States v. Martinez* and *United States v. Soto*.

In the Government's view, *Martinez* is inapplicable because the decision "concerned the need for extrapolations for sentencing purposes to be grounded in specific evidence and the rejection of inferences not based in evidence," whereas here, "the drugs seized in the safe alone far exceeded the threshold quantity" allegedly attributable to Ms. Sarcia. Mot. at 16. The Government argues that *Soto* is inapplicable because the court there found that "mere presence in an apartment used during a drug conspiracy was insufficient to establish membership in the conspiracy," whereas here, Ms. Sarcia was aware that Mr. Whyte moved a different large safe with firearms and drugs, there was a women's purse stored in the safe, DNA evidence was inconclusive as to whether the items in the safe had Ms. Sarcia's DNA on it, Ms. Sarcia had "unfettered use" of the apartment, Ms. Sarcia had a close relationship with Mr. Whyte, and, in one instance, Ms. Sarcia asked if she could "go and grab" something from the apartment without Mr. Whyte. *Id.* at 17. In the Government's view, this evidence was sufficient for the jury to find that Ms. Sarcia constructively possessed the drugs in the safe. *Id.*

Finally, the Government argues that the Court conflated direct possession with constructive possession and that Ms. Sarcia's role in the conspiracy gave her constructive possession of the safe in Unit 10. *Id.* at 18.

In response, Ms. Sarcia emphasizes the lack of evidence that Ms. Sarcia knew how to open the safe, knew what drugs, if any, were stored in the safe, saw significant quantities of

12

cocaine or heroin, knew of any drug sales that happened in the shared apartment, or knew when the seized drugs were put in the safe. *See* Opp'n at 3. Ms. Sarcia also notes that there was no evidence that Ms. Sarcia knew that the seized safe was in their shared apartment or when it was put there. *See id.* at 4. Ms. Sarcia argues that without any evidence showing Ms. Sarcia had knowledge of the contents of the safe or had access to the safe, the Government's argument is "based upon speculation." *Id.*

The Court agrees.

The Government points to a few pieces of evidence that the Court did not explicitly address in its prior order – although it implicitly did – but this evidence is insufficient to meet the strict standard for reconsideration.

More specifically, the text message in which Ms. Sarcia asked Mr. Whyte if she could "go and grab it" from the apartment does not, as the Government suggests, support the inference that she had access to the Unit 10 safe. *See* Ex. 512. The safe isn't mentioned in the surrounding text messages. Mr. Whyte had access to several apartments in the building, and the text message does not specify which apartment Ms. Sarcia asked to "go and grab it" from. Moreover, the text messages do not even specify that she's referring to the building where they share an apartment, which is notable given that Mr. Whyte kept drugs in many different places. Without additional context, this is insufficient to support an inference that Ms. Sarcia had access to or knowledge of the contents of the safe. *See Valle*, 807 F.3d at 515 ("[S]pecious inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is *probably* guilty."). Therefore, this is not evidence that could "reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.

Additionally, the DNA results from the items found in the Unit 10 safe does not alter the
Court's conclusion that there was insufficient evidence to show that Ms. Sarcia had knowledge
of or access to the safe's contents. *See* Order at 47, ECF No. 1977. One of the DNA samples in
the safe pulled from the women's purse was "too complex" to be tested, which the Government's
expert testified meant that it was "a sample where there [were] five or more contributors to the
DNA mixture." Tr. at 939; Ex. 411 at 4. Both Ms. Sarcia and Mr. Whyte were eliminated as
DNA contributors for most of the items found in the safe. *See* Ex. 412 at 2. The DNA found on
three items were "inconclusive" as to Ms. Sarcia, which, according to the Government's expert
meant "basically [there was] no result, [the test] couldn't tell either way." Tr. at 928–29. This
evidence is insufficient to show that Ms. Sarcia's DNA was found on these items and therefore,
is certainly insufficient to support the inference that she knew of or had access to the contents of
the safe. *See Valle*, 807 F.3d at 515 ("[S]pecious inferences are not indulged, because it would
not satisfy the Constitution to have a jury determine that the defendant is *probably* guilty.").[1]

Therefore, even if this evidence could be considered "overlooked," the evidence would
not "reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at
257.

The Government's attempt to distinguish *Martinez* and *Soto* are similarly unsuccessful.
The Government's arguments about *Martinez* do not identify a clear error because the
Government assumes that there was sufficient evidence that Ms. Sarcia could be held responsible

---

[1] The Government also relies on Exhibit 407, which is a text message exchange between Ms. Sarcia and Mr. Whyte
discussing the transfer of a large safe using Ms. Sarcia's jeep. *See* Mot. at 42. This is similarly unhelpful because,
while it may lead to the reasonable inference that Ms. Sarcia knew a safe was in the apartment complex, these texts
do not establish that she had access to or knowledge of its contents. Moreover, these texts occurred on May 5, 2018,
but the Government did not execute the search warrant and seize the Unit 10 safe until February 21, 2019. *See* Tr. at
826–27; Ex. 407. Therefore, even if the jury could infer that Ms. Sarcia had knowledge of the safe's contents at the
time it was moved in 2018, this is not sufficient to show she had knowledge of the contents of the safe when it was
seized, particularly in light of the lack of evidence that she could access the safe herself.

for the quantity of drugs found in the Unit 10 safe. But, as discussed at length in this order and the Court's prior order, that is not the case.

Additionally, *Soto* is not a case, as the Government suggests, where "mere presence at a scene where contraband was located" was not enough. *see* Opp'n at 17. The court in *Soto* emphasized that certain inferences are insufficient to support a criminal conviction. *See* 716 F.2d at 991–92. More specifically, the court in *Soto* found that "no jury could reasonably" infer that the defendant participated in the conspiracy based on "[t]he fact that [the defendant] was considered trustworthy" enough for a co-defendant to allow the defendant to live in his apartment where he kept drugs. 716 F.2d at 992. Despite attempting to distinguish the facts of this case, this is the exact inference the Government now requests the Court to make when it argues that a jury could reasonably conclude that large quantities of drugs contained in the Unit 10 safe were reasonably foreseeable to Ms. Sarcia based on her relationship of trust with Mr. Whyte. *See* Mot. at 17–18 (arguing the drugs in the Unit 10 safe could be attributed to Ms. Sarcia "based on her unfettered use of the . . . apartment[ and] her relationship with [Mr.] Whyte," among other things). As *Soto* makes clear, this is insufficient to support an inference that Ms. Sarcia knew of or could access the safe's contents.

Therefore, these cases, were not "overlooked" and the Government's argument that they are distinguishable does not establish "clear error." *See Kolel Beth Yechiel Mechil of Tartikov v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013).

Accordingly, the Governments motion for reconsideration will be denied on these grounds.

15

**IV.     CONCLUSION**

For the reasons explained above, the Court **DENIES** the Government's motion for
reconsideration.

**SO ORDERED** at Bridgeport, Connecticut this 9th day of December, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE
